### TILGE v. UNITED STATES.

(Circuit Court, E. D. Pennsylvania. May 16, 1902.)

CUSTOMS DUTIES—COTTON NET—STATUTE APPLICABLE.

    Cotton net, cut into narrow strips or small pieces, and known to the trade as "cotton net," "cotton net cut," "hat tips," "hat crowns," or "hat sides," are dutiable as cotton netting, under Tariff Act 1894, par. 276, fixing an ad valorem duty of 50 per cent. on such netting, and not as manufactures of cotton dutiable under paragraph 264 as 35 per cent.

Appeal by the Importer from a Decision of the Board of United States General Appraisers.

Frank P. Prichard, for appellant.

James B. Holland, U. S. Atty., Jos. W. Thompson, and Wm. M. Stewart, for the United States.

J. B. McPHERSON, District Judge. The facts involved in this controversy appear in the following quotation from the brief of appellant's counsel:

"The importer, Henry Tilge & Co., imported into the port of Philadelphia the merchandise which is involved in the present appeal, the nature and character of which is set forth in the following agreement as to the facts which has been entered into by counsel for both parties:

"It is agreed by and between counsel for the appellant and for the United States that the merchandise covered by the appeal in the above-entitled cause consists of strips of the fabric called 'cotton net,' cut into narrow strips or small pieces, designed for use in the lining of men's hats; that these strips are bought and sold and known in

the trade and commerce both as 'cotton net,' or 'cotton net cut,' and as 'hat tips,' 'hat sides,' and 'hat crowns,' and, as imported, they are intended and suitable for use for the lining of the sides and crowns of men's hats, and for no other purpose; that cotton net is usually woven in pieces of about fifty to one hundred yards long, by forty-five to one hundred inches in width.

"The collector, upon the arrival of the merchandise in question, assessed duty upon the same at the rate of fifty per cent. ad valorem, as 'cotton net,' under paragraph 276 of the tariff act of 1894. The importer claimed that the merchandise was dutiable at thirty-five per cent. ad valorem as manufactures of cotton, under paragraph 264 of the same act. The United States board of general appraisers sustained the decision of the collector, and thereupon this appeal was taken.

"The two paragraphs which are involved in this case are as follows:

" '264. All manufactures of cotton, including cotton duck and cotton damask, in piece or otherwise, not specially provided for in this act, and including cloth having india rubber as a component material, thirty-five per centum ad valorem.'

" '276. Laces, edgings, nettings and veilings, embroideries, insertings, neck rufflings, ruchings, trimmings, tuckings, lace window curtains, tamboured articles and articles embroidered by hand or machinery, embroidered handkerchiefs and articles made wholly or in part of lace, rufflings, tuckings or ruchings, all of the above named articles, composed of flax, jute, cotton or other vegetable fibre, or of which these substances, or either of them, or a mixture of any of them, is the component material of chief value, not specially provided for in this act, fifty per centum ad valorem.'

"The question which is therefore presented by the present appeal upon the agreed state of facts is whether the merchandise in question, consisting of narrow strips or pieces of cotton net, designed for use in the linings of men's hats, is to be regarded as cotton netting or as a manufacture of cotton."

In my opinion, the answer to this question is, that the merchandise should be regarded as cotton netting, and not as a manufacture of cotton. Whether the process of cutting is of itself sufficient to make each separated piece a manufactured article, is a point upon which the cases are apparently not in harmony. It seems to me unnecessary, however, to decide the point upon this appeal, for the agreed facts show that the merchandise in controversy continues to be known by the name of "cotton net," or "cotton net cut," as well as by the names "hat tips," "hat sides," and "hat crowns." I think, therefore, that it is specially provided for by paragraph 276, falling within the words "nettings * * * composed of * * * cotton." If it had acquired a definite and exclusive name of its own, as was the case in Re Kursheedt Mfg. Co., 4 C. C. A. 262, 54 Fed. 159, it would then be necessary to determine whether the mere process of cutting had made it an article that was properly described as a "manufacture of cotton." But as it has acquired no such exclusive designation, I regard it as specifically provided for by paragraph 276.

The decision of the board of appraisers is accordingly affirmed.